UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-23084-CIV-HUCK/SIMONTON

MELVIN COLINDRES and ALMA
COLINDRES, as parents and natural
guardians of KEVIN COLINDRES,

      Plaintiffs,
vs.

CITY OF MIAMI and POLICE CHIEF
JOHN TIMONEY, individually,

      Defendants.
_____/

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendants City of Miami and Police Chief Timoney's Motion to Dismiss, filed February 13, 2007. The Court has considered the Motion, Plaintiffs' Response thereto, and Defendants' Reply in further support thereof. The Court is duly advised in the Premises.

### BACKGROUND[1]

On December 12, 2006, four City of Miami Police Department Officers responded to a call from the Plaintiffs' home. A family member present in the home had called 911 when Plaintiffs' mentally disabled 18-year-old son, Kevin Colindres, experienced an emotional outburst.[2] Although the situation had stabilized by the time the first officers arrived on the scene, additional officers who responded became belligerent and confrontational. Against the officers' orders to sit still on a couch,

---

[1] The facts set forth herein are those alleged in the Second Amended Complaint, filed January 19, 2007.

[2] In their Motion to Dismiss the Second Amended Complaint, Defendants state that police were called to the home by Kevin Colindres's sister because Kevin was violently assaulting their mother.

Kevin Colindres began to rise and the officers grabbed him and threw him to the floor. The officers handcuffed Kevin Colindres's wrists behind his back and removed him from the home. The officers and placed Kevin Colindres on the sidewalk in front of a neighbor's home, where he was further restrained with a "hobble device." A hobble device consists of an ankle restraint with a lead that can either be attached to handcuffs or held up behind the arrested person, thus applying pressure to the ankle restraint. As two officers knelt on Kevin Colindres's right and left shoulders and a third sat on his legs, a fourth officer "performed" the hobble restraint, holding the lead of the hobble up while Kevin Colindres lay face-down on the sidewalk. Plaintiffs allege that the officers were aware of the increased risk of asphyxiation posed by such restraining measures, particularly to a mentally disabled person, but the officers used the measures on Kevin Colindres anyway.

Even though Kevin Colindres allegedly offered no resistance, officers continued to apply pressure to his back, shoulders and legs. The officers did not detect when Kevin stopped breathing. He was allowed to remain motionless for several minutes. Kevin did not respond when officers placed an ammonia tube to his nose in an attempt to revive him. No officer on the scene performed CPR. Minutes passed before the officers called for medical care, which arrived on the scene shortly thereafter. By then, however, Kevin had suffered hypoxia, which caused severe and irreparable brain damage. Kevin Colindres died on January 5, 2007.

## PROCEDURAL HISTORY

On December 18, 2006 – less than a week after Kevin's encounter with the police, but before his death – Plaintiffs filed their initial Complaint for Damages in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County. On December 22, 2006, Defendants removed the case to this Court. Following Kevin's death and on account thereof, Plaintiffs sought and obtained leave to file their Second Amended Complaint on January 19, 2007. The Second Amended Complaint sets forth two counts, both based on 42 U.S.C. 1983.

Count I seeks to hold Defendant City of Miami liable for its alleged policies, customs, and/or practices which caused the unconstitutional use of excessive force upon Kevin Colindres. The City's alleged policies, customs and practices are set forth in detail in Count I, but generally include a failure to properly train and supervise its officers, allowing the use of hobble restraints under the

circumstances outlined above, failing to have sufficient Crisis Intervention Team ("CIT") officers on the force and failing to dispatch them promptly enough, failing to evaluate officers to determine which ones might be prone to using excessive force, and not requiring officers responding to the scene of a mentally ill person to obtain records of prior incidents with the person.

Count II seeks to hold Defendant Police Chief John Timoney liable in a supervisory capacity for failing to properly train officers under his command.  Timoney is also blamed for instituting policies that resulted in an insufficient number of CIT Officers to deal with the mentally disabled, improper restraints used on the mentally disabled, failure of officers to properly monitor the vital signs of restrained subjects, and inadequate protocol for administering CPR to subjects in custody. Thus, Count II is premised on two theories of liability: (1) failure to train and (2) designing and implementing unlawful policies.

Defendant City of Miami moves to dismiss Count I of the Second Amended Complaint because, in its view, the allegations set forth in the Complaint do not establish that the City had a policy of inadequately training or supervising its officers and that such policy caused officers to violate Kevin Colidres's constitutional rights.  Defendant Timoney has moved to dismiss Count II of the Second Amended Complaint on the basis of qualified immunity.  Defendant Timoney moves for dismissal of the failure to train aspect of Count II because Plaintiffs fail to identify with specificity the constitutional violation upon which their claim is based.  Defendant Timoney additionally seeks dismissal of Plaintiffs' failure to train claim because Plaintiffs allegations fail to establish that he either participated in or caused any constitutional deprivation.   As for that portion of Count II based on Defendant Timoney's customs or policies, Timoney moves for dismissal because the claims are conclusory and lacking in specificity.

## STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff, and accept the plaintiff's well-pleaded facts as true. *Scheur v. Rhodes*, 416 U.S. 232,

236 (1974); *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993). The Eleventh Circuit has tightened the pleading requirements in civil rights cases under §1983, especially those involving the defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998). The complaint must allege the relevant facts "with some specificity." *Id*. "[M]ore than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.1984). *See also Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir.1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). Moreover, in reviewing a motion to dismiss, the Court need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). The Court is also mindful must also that official conduct is generally accorded a presumption of legitimacy. *United States Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991). With the foregoing standard in mind, the Court considers the Defendants' motion to dismiss as it relates to each count in the Second Amended Complaint.

## ANALYSIS
## COUNT I – AGAINST THE CITY OF MIAMI

In Count I, Plainitiffs allege that the City had policies, practices and customs that resulted in an unconstitutional use of excessive force upon Kevin Colindres. Specifically, Plaintiffs allege that the City failed to properly train its police officers to deal with mentally disabled persons; failed to train officers on the appropriate use of force; failed to train officers on the use and need for first aid and/or CPR; and failed to train officers to monitor the vital signs of restrained subjects. Additionally, Plaintiffs take issue with the City's policy of allowing the use of hobble restraints; its failure to report the use of excessive force with respect to mentally ill persons; its insufficient number of CIT officers to deal with the mentally disabled; and its failure to have a policy of requiring officers responding to the scene of a mentally disabled person to obtain records of prior incidents involving the person. The

City moves for dismissal of Count I because, in its view, Plaintiffs have not established that it had any official policies, customs or practices that resulted in the violation of Kevin Colindres's Constitutional rights.

The Eleventh Circuit observed in *Gold v. City of Miami*, 151 F.3d 1346 (11 th Cir. 1998), that municipal liability under section 1983 is strictly limited. A municipality is not liable for the wrongful actions of its police officers on a theory of *respondeat superior*. *Id*. (citing *Monell v. Department of Social Servs*., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Instead, a municipality may be held liable for the actions of a police officer only when municipal "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694-95, 98 S.Ct. 2018. Therefore, a section 1983 plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury," *Gold*, 151 F.3d at 1350 (citing *Board of County Com'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The largest number of improper policies alleged on the part of the City involve its training of police officers. However, even if the City did inadequately train or supervise the officers who responded to the Colindres home on the evening in question and those officers violated Kevin Colindres's constitutional rights, the City is not automatically liable under section 1983. *Gold*, 151 F.3d at 1350. The City can only be liable if it had an official *policy* of inadequately training or supervising its officers and that policy caused the officers to violate a Kevin Colindre's constitutional rights. *City of Canton*, 489 U.S. at 389-91, 109 S.Ct. 1197; *see also Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir.1989). Since a municipality rarely, if ever, will have an express written or oral policy of inadequately training its employees, a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants.

> "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality – a  "policy" as defined by our prior cases – can a city be liable for such a failure under § 1983.

*City of Canton*, 489 U.S. 378, 388-89, 109 S.Ct. 1197 (internal citations omitted).

The City of Miami argues that the allegations in the Second Amended Complaint fail to establish that it was deliberately indifferent to Kevin Colindres's rights. "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350 (citing *Board of County Com'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1390-91, 137 L.Ed.2d 626 (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir.1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir.1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir.1989)). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id*. The City argues that the Second Amended Complaint fails to establish the it was on notice of the need for additional training or supervision with regard to officer interaction with the mentally ill. The Court agrees.

The Eleventh Circuit repeatedly has held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id*. For example, in *Wright v. Sheppard*, 919 F.2d 665 (11th Cir.1990), the Eleventh Circuit held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." *Id*. at 674. In *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994), the Eleventh Circuit reversed a district court's preliminary injunction against a municipality, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the municipality was aware of a prior incident in which constitutional rights were similarly violated. *Id*. at 1342-46. *See also Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir.1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). In *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir.1987), even though there had been ten citizen complaints about a particular police officer, the Eleventh Circuit held that the municipality which employed the officer did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." Id. at 1193.

Plaintiffs cite no prior incidents remotely similar to the incident at issue here which would have put the City on notice of a need for additional training for its officers. The Plaintiffs cite no evidence of widespread use of excessive force by the Miami Police Department. They do not cite any evidence of repeated violations of the rights of mentally ill persons by Miami police officers. Plaintiffs have not cited any prior incidents where officers failed to monitor a restrained subject's vital signs or render first aid or CPR when necessary. Instead, Plaintiffs seek to establish that the City was deliberately indifferent to the need for more training in these areas by noting that, as early as 1979, the International Association of Chiefs of Police recommended that when dealing with a mentally disturbed person like Kevin Colindres, a quiet, calm and non-threatening approach with slow movements should be used. Plaintiffs also allege that the City was or should have been aware that the hobble restraint used on Kevin Colindres increased the risk of positional asphyxiation, particularly to a mentally disabled person, and has been held an unconstitutional use of force by one or more federal courts. Additionally, Plaintiffs allege that the City was aware of the increased risk of asphyxiation posed by placing restrained subjects prone on the ground because such risk has been documented in police handbooks, Department of Justice symposia, and numerous law enforcement and medical articles, and the practice has been outlawed by other police departments. These allegations, however, do not satisfy the Eleventh Circuit's requirements for establishing "deliberate indifference." Rather, the allegations simply confirm what the Eleventh Circuit noted in *Gold*, that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Gold*, 151 F.3d at 1351, n.10. Accordingly, Plaintiffs have failed to state a claim against the City under section 1983 for failing to train its officers.

Not all of Count I is based on the City's alleged failure to train its officers. Much of Count I is based on the City's allegedly improper customs and/or policies. Plaintiffs allege in Count I that the City has official policies or customs of (1) allowing the use of hobble restraints on a subjects who are in the prone position; (2) failing to report the use of excessive force with respect to mentally ill persons; (3) employing an insufficient number of CIT officers to deal with the mentally disabled; (4) failing to conduct proper psychological and/or psychiatric testing of officers to determine which officers were likely to use excessive force. Additionally, Plaintiffs take issue with the City's lack of

a policy requiring officers to obtain records of prior incidents involving a mentally ill subject. Plaintiffs claim that each of these official customs or polices caused the violation of Kevin Colindres's constitutional rights.

To establish a policy or custom, a plaintiff normally must show a persistent and widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991); *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994). Plaintiffs here have failed to demonstrate that the City actually has the policies or customs alleged in paragraph 35 of the Second Amended Complaint. There is no indication that the City has, on a persistent and widespread basis, allowed the use of the hobble on subjects in the prone position, or failed to report the use of excessive force on mentally ill persons in the past. Similarly, Plaintiffs provide no support for their allegation that the City has a policy of employing too few CIT officers to deal with the mentally disabled. Nor do Plaintiffs provide any support for their allegation that the City fails to conduct proper psychological or psychiatric testing of its officers. As for their allegation concerning the City's lack of a policy requiring officers to investigate past incidents involving mentally ill subjects, it too is conclusory in nature.

Plaintiffs also fail to adequately allege how each of the City's alleged policies and customs *caused* the violation of Kevin Colindres's rights. "In order for [a] plaintiff to prove that a municipal policy or practice caused a constitutional violation, the plaintiff must prove an affirmative link between the various incidents of policy misconduct and the adoption of any plan or policy by the municipality or supervisory official showing their authorization or approval of such misconduct." *Anderson v. City of Atlanta*, 778 F.2d 678, 687 (11th Cir. 1985). While Plaintiffs set forth a litany of alleged policies and customs, they fail to establish how each policy or custom was linked to the events which transpired. In view of the tightened pleading requirements applicable in cases under §1983, which require a §1983 plaintiff to allege with some specificity the facts which make out his claim, the Court finds that Plaintiffs have failed to state a claim of municipal liability under §1983. *See GJR Investments, Inc.*, 132 F.3d at 1367. Count I must, therefore, be dismissed.

## COUNT II – AGAINST CITY OF MIAMI POLICE CHIEF TIMONEY

In Count II, Plaintiffs seek to hold Defendant City of Miami Police Chief Timoney liable under §1983 for his officers' alleged violation of Kevin Colindres's constitutional rights. There are two ways in which an individual official may be held liable under §1983. *See Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). An individual may be subject to direct liability for his own actions or, under limited circumstances, supervisory liability for the actions of his subordinates. *Id*. Plaintiffs' theory that Defendant Timoney is liable for the violation of Kevin Colindres' constitutional rights because of his improper policies and his alleged failure to properly train officers under his command, is a recognized claim of *supervisory* liability. *See Asad v. Crosby*, 2005 WL 2993866, at *2 (11th Cir. Nov. 9, 2005); *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005). Defendant Timoney has moved to dismiss Count II of the Second Amended Complaint on the basis of qualified immunity.

The doctrine of qualified immunity affords immunity from suit to government officials performing discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When officials are sued in their individual capacities, the application of qualified immunity to their actions is the rule rather than the exception, and only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. *Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797 (11 th Cir. 1998)(citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc)).

To determine whether an official is entitled to immunity, the Court employs the Supreme Court's two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, considered in the "light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201, 121 S.Ct. at 2156. If, in doing this, the Court finds that no constitutional right was violated, the inquiry ends there and the official is entitled to qualified immunity. If the facts disclose a constitutional violation, however, the Court must then must ask whether, at the time the violation occurred, "every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett*

*v. Athens-Clarke Co.*, 378 F.3d 1274, 1278-79 (11th Cir.2004) (citing *Saucier*, 533 U.S. at 201-02, 121 S.Ct. at 2151); *see also Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Thus, the first question for the Court to consider is whether Plaintiffs have adequately alleged a violation of a constitutional right for which Defendant Timoney *could* be held liable. In response to Defendant Timoney's argument that Plaintiffs failed to specify which, if any, of Kevin Colindres's rights were violated, Plaintiffs note that the allegations in the Second Amended Complaint establish that Kevin Colindres was subjected to an unreasonable seizure and the use of excessive force, in violation of the Fourth Amendment, and was deprived of life and liberty without due process of law, in violation of the Fifth Amendment. More specifically, the complaint alleges that, even though the first officer on the scene arrived to find Kevin Colindres calm and the situation stabilized, additional police officers arrived on the scene and became belligerent and confrontational. They used loud voices and issued commands. When Kevin Colindres disobeyed their command to remain seated on a couch, the officers grabbed him and threw him to the floor in the living room. Kevin Colindres's hands were cuffed behind his back before he was taken outside and placed on the sidewalk in front of a neighbor's home. Although Kevin Colindres offered no resistance, the officers further restrained him with a hobble device. As two officers knelt on Kevin Colindres's right and left shoulders and a third sat on his legs, a fourth officer held up the lead of the hobble as Kevin Colindres lay face down on the sidewalk. The officers continued to apply pressure to Kevin Colindres's back, shoulders and leg and did not detect when Kevin Colindres stopped breathing. Kevin Colindres remained motionless for several minutes before officers unsuccessfully attempted to revive him by placing an ammonia tube to his nose. No officer on the scene performed CPR and minutes passed before the officers called for medical care, which arrived on the scene shortly thereafter. Kevin Colindres suffered hypoxia, which caused severe and irreparable brain damage. Kevin Colindres died in the hospital several days later. Plaintiffs argue that the foregoing allegations establish violations of Kevin Colindres's Fourth and Fifth Amendment rights.

The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force during a criminal apprehension. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether police officers' use of

force was reasonable and lawful under the Fourth Amendment, the Court must determine "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir.2002) (citation omitted). Under *Graham*, courts should determine the "objective reasonableness" of a seizure by balancing the "nature and quality of the intrusion" against the "governmental interest at stake." 490 U.S. at 396, 109 S.Ct. 1865. In this case, the intrusion was substantial. Kevin Colindres was "thrown" to the floor in his family's home, placed in handcuffs and a hobble device, and pinned face down by several officers.

When determining the government's interest, the Court must consider factors that include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Furthermore, the reasonableness of a "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Because this case does not involve a criminal arrest, the facts do not fit neatly within the *Graham* framework. See *Mercado v. City of Orlando*, 407 F.3d 1152 (11 th Cir. 2005)(applying Graham analysis to a case that did not involve a criminal arrest, but instead an attempted suicide). On the basis of the facts alleged in the Second Amended Complaint, the Court cannot measure the "severity of the crime at issue."

The Court must next consider the extent to which Kevin Colindres placed himself or others in danger. *See Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir.2004) (granting qualified immunity to officer who used deadly force on a suicidal victim who "posed an immediate threat of harm" to himself, the officer, and others). Viewing the alleged facts in the light most favorable to Plaintiffs, it appears that Kevin Colindres made no threatening moves toward the police or anyone else. *See Mercado*, 407 F.3d 1152 (denying qualified immunity to officers who fired a projectile at a suicidal subject who had made no threatening moves toward the officers); *Deorle v. Rutherford*, 272 F.3d 1272, 1284-85 (9th Cir.2001) (denying officers qualified immunity after deploying a projectile "bean bag" and taking out the eye of a subject who was relatively cooperative and not a threat to the officers or others). Furthermore, it does not appear from the complaint that Kevin Colindres was actively resisting arrest, and there is no indication that he struggled with the police. *Cf. Fernandez v. Cooper City*, 207 F.Supp.2d 1371, 1377 (S.D.Fla.2002) (affording qualified immunity to excessive force charge where officers subdued an emotionally unstable person who was actively

-11-

resisting arrest). Plaintiffs allege that Kevin Colindres did nothing more than disobey officers' command that he remain seated on a couch in his home. Accordingly, all of the factors articulated in *Graham* weigh in favor of Plaintiffs. If Plaintiffs successfully prove their allegations that Kevin Colindres was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was taken down and restrained, face down, with the hobble device, they would successfully establish that the officers used excessive force in violation of the Fourth Amendment.

Having determined that Plaintiffs adequately allege a violation of Kevin Colindres's constitutional rights, the Court must next consider whether, at the time the violation occurred, "every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Saucier*, 533 U.S. at 201-02, 121 S.Ct. at 2151. In *Foy v. Holston*, the Eleventh Circuit wrote:

> Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established.... This burden is not easily discharged...Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms.

94 F.3d 1528, 1532 (11th Cir.1996) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994)). Instead, for qualified immunity to be denied, pre-existing law must truly compel the conclusion that what the actor is doing violates federal law *in the circumstances*. *See McMillian v. Johnson*, 88 F.3d 1554, 1562 (footnote omitted), *amended on other grounds*, 101 F.3d 1363 (11th Cir.1996). A plaintiff can show that the law clearly established that an officer's use of force was excessive in two ways: (1) "a controlling and materially similar case declares the official's conduct unconstitutional;" or (2) "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir.2000) (internal quotation and citation omitted).

Plaintiffs point to the case of *Gutierrez v. City of San Antanio*, 139 F.3d 441 (5th Cir. 1998), in support of their argument that the hobble device used to restrain Kevin Colindres was clearly unconstitutional. In *Gutierrez*, two officers placed a subject in a "hog tie" similar to the hobble device employed in this case. The subject was placed "face down, his hands secured behind his back with handcuffs and his feet tied with a rope which was then tied to his hands or the handcuffs." *Id*. at 444.

In this position, the subject suffered from hypoxia and ultimately death. The district court denied the officers' motion for summary judgment on the basis of qualified immunity. The Fifth Circuit affirmed the district court's decision, noting that even though the hog tie itself had never been declared unconstitutional, Plaintiffs had put forth evidence in the form of a San Diego Police Department report which suggested that positional asphyxia was the second leading cause of death among subjects in custody, thereby creating a question of fact as to whether the hog tie could be considered deadly force and, therefore, excessive under the circumstances.

Plaintiffs have cited the same San Diego Police Department study in this case, as well as the Fifth Circuit's decision in *Gutierrez* in support of their argument that the use of the hobble device on a subject in the prone position is unconstitutional. However, the Fifth Circuit in *Gutierrez* expressly recognized the difference between a hog tie and a hobble. *Id*. at n.6. The court observed that the San Diego study provided that the hobble, which consists of a Velcro strap to restrain the arrestee's feet and a cord to connect the handcuffs and the Velcro strap, was a common and inexpensive alternative to the hog tie. Recognizing this distinction, Plaintiffs argue that a "proper" hobble restraint is supposed to keep a subject in an upright position and that the hobble becomes an unconstitutional hog tie when used on a subject in the prone position. The Court disagrees.

In *Estate of Phillips v. Milwaukee*, 123 F.3d 586 (7th. Cir. 1997), the Seventh Circuit held that restraining a subject in a prone position with both his hands and legs cuffed (but not together) and applying pressure to his back is not the same as employing a hog tie. The Seventh Circuit noted that the difference between such measures and a hog tie was that the subject's hands and legs are not bound together. Although Plaintiffs here allege that the hobble device used on Kevin Colindres can be used in such a way as to bind a subject's hands and legs together, they do not allege that the hobble was actually used in such a way on Kevin Colindres. Accordingly, the Court finds that the hobble device used in this case was not an unconstitutional hog tie, as contemplated by the Fifth Circuit in *Gutierrez*. Even if the hobble device *could* accurately be characterized as a hog tie, it is not clear that such restraint would be unconstitutional in every circumstance. *See, e.g., Mayard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997)(finding that officers' use of a hog tie was objectively reasonable in light of the restrained subject's resistance to arrest). Accordingly, Plaintiffs have failed to establish that prior case law clearly establishes that the hobble device used on Kevin

-13-

Colindres was unconstitutionally excessive.

Nevertheless, as noted above, a plaintiff may also establish that the law clearly established that an officer's use of force was excessive where "the [officer's] conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester*, 208 F.3d at 926. Taking all of the allegations in the Second Amended Complaint as true, it appears that every officer would have known that the force exerted on Kevin Colindres was excessive under the circumstances. Plaintiffs allege that Kevin Colindres did nothing more than rise from a couch where he had been ordered to remain seated before he was thrown to floor, handcuffed, hobbled and pinned to the ground by several officers. Under this version of the facts, which the Court must accept as true at this stage of the litigation, every objectively reasonable police officer would have realized the alleged acts violated the Fourth Amendment's protection against excessive force. Accordingly, Plaintiffs have sufficiently alleged that the officers who responded to the Colindres home on the night in question violated Kevin Colindres's clearly established constitutional rights.

Plaintiffs, however, do not seek to hold the officers themselves liable for the violation of Kevin Colindres's rights. Instead, Plaintiffs have sued the officers' supervisor, Police Chief Timoney. A supervisor like Defendant Timoney can only be liable under §1983 if he personally participated in the allegedly unconstitutional acts of his subordinates or if his actions bore a causal relationship to the alleged constitutional deprivation. *Id.* (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Since Defendant Timoney is not alleged to have participated in the constitutional violations allegedly committed at the Colindres home, the Court must determine whether Defendant Timoney's conduct nevertheless *caused* the volations. The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir.2003). (*quoting Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy ... result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d 1228

(quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d 1228 (internal quotation marks and citation omitted).

Plaintiffs allege that Defendant Timoney caused the violation of Kevin Colindres's constitutional rights by (1) failing to properly train and supervise officers to deal with the mentally disabled; (2) failing to train officers on appropriate use of force; (3) failing to train officers to render first aid and CPR; (4) permitting the use of hobble restraints on subjects who were placed face down with pressure applied to their backs; (5) failing to have officers monitor the vital signs of subjects placed in such restraints; (6) failing to train officers to promptly seek medical assistance when necessary; (7) failing to report the use of excessive force; (8) failing to have sufficient CIT officers to handle the mentally disabled and to timely dispatch such officers to the Colindres' home; (9) failing to properly discipline officers who used excessive force in the past; (10) lacking an adequate policy or custom to properly train officers; and (11) failing to have a practice of properly handling repeat calls for the mentally disabled. Thus, it appears that Plaintiffs seek to hold Defendant Timoney both for failing to train officers in certain areas and for instituting customs and policies which resulted in the violation of Kevin Colindres's rights.

Where a plaintiff alleges that a supervisor is liable for failing to train his subordinates, the analysis is analogous to that applied above with respect to a city's municipal liability under §1983. *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) and *Kerr v. City of West Palm Beach*, 875 F.2d 1546)(11th Cir. 1989)). As noted above, "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388, 109 S.Ct. at 1204. Such "deliberate indifference" arises where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *Id.* at 390. The "obvious" need for training may take two forms: (1) "a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face"; or (2) where "policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." *Id.* at 396-97 (O'Connor, J., concurring in part and dissenting in part).

On the latter form, the Eleventh Circuit has held that a plaintiff must establish a "longstanding and widespread practice" of the alleged constitutional violations. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). *See also Gold*, 151 F.3d at 1350 (noting that to establish deliberate indifference "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action"); *Greason*, 891 F.2d at 838 (finding that "failure to institute corrective procedures after [similar] incident could also be viewed as deliberate indifference"); *Kerr*, 875 F.2d at 1556 (finding that "the frequency of constitutional violations may, in itself, provide sufficient circumstantial evidence that a municipality has chosen to allow its officers to act without adequate training").

The Court finds that Plaintiffs have failed to demonstrate that there was an obvious need for additional training with respect to each shortcoming alleged in paragraph 35 of the Second Amended Complaint. Plaintiffs identify no other instances of police officers improperly restraining or subduing mentally disabled persons, employing the hobble restraint on subjects in the prone position, or failing to quickly and properly render CPR or other first aid when necessary. Similarly, Plaintiffs have not alleged that the use of excessive force by Miami Police officers was so widespread that the need for additional training on the use of force was obvious. Accordingly, the allegations in the Second Amended Complaint fail to adequately establish that Defendant Timoney is liable under §1983 for failing to adequately train officers under his command.

Another way in which a causal connection may be established between a supervisor's conduct and a constitutional violation is when the supervisor's "custom or policy" results in "deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)(citing *Zatler v. Winright*, 802 F.2d 397 (11th Cir. 1986)). As they did in Count I against the City, Plaintiffs also allege several customs or policies on the part of Defendant Timoney which allegedly caused the violation of Kevin Colindres's constitutional rights. Specifically, Plaintiffs claim in paragraph 44 of the Second Amended Complaint that Defendant Timoney employed an insufficient number of CIT officers; had improper protocol for when CIT officers would be dispatched; allowed the use of improper restraints on the mentally disabled; and lacked proper protocol for officers to monitor restrained subjects' vital signs and administer first aid when necessary. Plaintiffs, however, fail to provide sufficient allegations in support of these conclusions. Again, in order to prove that a policy

or custom caused a constitutional violation, a plaintiff must establish an affirmative link between the various incidents of policy misconduct and the adoption of any plan or policy by the supervisory official showing his authorization or approval of such misconduct. *Anderson*, 778 F.2d at 687. The conclusory allegations in Count II of the Second Amended Complaint do not provide a sufficient link between Defendant Timoney's alleged policies and the events which transpired in the Colindres home. Accordingly, Count II of the Second Amended Complaint fails to state a claim of supervisory liability on the part of Defendant Timoney and must therefore be dismissed.

## CONCLUSION

For all the reasons set forth above, it is hereby

ORDERED that Defendants City of Miami and Police Chief John Timoney's Motion to Dismiss the Second Amended Complaint is GRANTED. The Second Amended Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff may file a Third Amended Complaint, if appropriate, on or before April 11th, 2007.

DONE AND ORDERED in Chambers, Miami, Florida, this 29th day of March, 2007.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record